**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Nicholas Corrow,<br><br>                              Plaintiff,<br><br>                    -v-<br><br>Nassau University Medical Center; John Doe (Surgeon); Nassau County Headquarters, *County Office*; Officer Lee, *Nassau County Police Department, Precinct Bethpage, New York*; John Doe, *Detective, Bethpage, New York*; Jane Doe, *Paramedic, Nassau County EMT*,<br><br>                              Defendants. | 2:24-cv-5018<br>(NJC) (LGD) |

**MEMORANDUM AND ORDER**

NUSRAT J. CHOUDHURY, United States District Judge:

Plaintiff Nicholas Corrow, proceeding pro se, filed this action against the following entities and individuals: Nassau University Medical Center ("NUMC"); John Doe (surgeon); Nassau County Headquarters; Officer Lee of the Nassau County Police Department precinct in Bethpage, New York; John Doe, a detective in Bethpage, New York; and Jane Doe, a paramedic with Nassau County EMT (together, "Defendants"). (Sec. Am. Compl. ("SAC"), ECF No. 15.) The Second Amended Complaint brings claims under 42 U.S.C. § 1983 ("Section 1983") and the Fourteenth Amendment to the United States Constitution alleging that Defendants were deliberately indifferent in providing Corrow medical treatment for an injury to his pinky finger which led to amputation of the finger.

Before the Court is NUMC's Motion to Dismiss the Second Amended Complaint with prejudice (the "Motion") under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). (Mem. in Supp. ("Mot.") ECF No. 55-1.) NUMC argues that the Second Amended

Complaint does not plausibly allege that NUMC recklessly failed to act or treat Corrow's injury, and that disagreement with NUMC's course of treatment does not give rise to a deliberate indifference claim under the Fourteenth Amendment.

For the reasons explained below, NUMC's motion is GRANTED.

## BACKGROUND

On July 12, 2024, Corrow, proceeding pro se, filed a complaint in this Court bringing Section 1983 claims arising out of alleged injuries that he sustained while detained at the Nassau County Correctional Center. (Compl., ECF No. 1.) On July 22, 2024, the Court filed an electronic order noting that Corrow did not pay the filing fee required to commence a civil action or file a motion to proceed in forma pauperis ("IFP"). (Not. of Deficient Filing, ECF No. 2.) As such, the Court instructed Corrow to either pay the filing fee or complete and return an enclosed application to proceed IFP and Prisoner Litigation Authorization form ("PLA") within fourteen days in order for this case to proceed. (*Id*.)

The fourteen-day deadline passed without Corrow paying the filing fee or returning the IFP and PLA forms. On August 22, 2024, the Court "direct[ed] Plaintiff to either pay the $405.00 filing fee or file an IFP application and PLA by September 20, 2024." (Elec. Order, Aug. 22, 2024.) On August 23, 2024, Corrow filed an Amended Complaint, IFP motion, and the PLA. (Am. Compl.; IFP App., ECF No. 8; PLA, ECF No. 7.)

### I.      September 24, 2024 Order Dismissing the Amended Complaint

On September 24, 2024, this Court issued an order granting Corrow's IFP motion. (*See* Order ("IFP Order"), *Corrow v. Nassau Univ. Med. Ctr.*, No. 2:24-cv-5018 (E.D.N.Y.), ECF No. 12.) Upon granting Corrow's IFP motion, the Court screened the Amended Complaint pursuant to 28 U.S.C. § 1915A, which instructs that "[t]he court shall review . . . as soon as practicable

2

after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint— (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or (2) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915A(a)– (b); *see also* 28 U.S.C. § 1915(e)(2)(B).

The Amended Complaint brought Section 1983 claims against NUMC and the Nassau County Police Department, alleging deliberate indifference in the medical care provided to Corrow related to his injured pinky finger. (Am. Compl. ¶ II.) For the reasons set forth in the IFP Order, the Court dismissed the Amended Complaint for failure to state any plausible claims for relief. (*See* IFP Order at 5–13.)

In the dismissal order, the Court construed the Amended Complaint's claims against NUMC as claims against the Nassau County Health Care Corporation ("NCHCC" or the "Health Care Corporation") and noted that NUMC is "a part of the Health Care Corporation, which 'is a public benefit corporation created by the New York State Legislature.'" *Id*. at 7 (quoting *Gaines v. Nassau Cnty. Health Care Corp.*, No. 18-cv-2109, 2019 WL 7472297, at *1 n.1 (E.D.N.Y. Dec. 9, 2019), *report and recommendation adopted*, No. 18-cv-2109, 2020 WL 42804 (E.D.N.Y. Jan. 3, 2020)); *see also* N.Y. Pub. Auth. Law § 3401 (establishing the NCHCC as a public benefit corporation). Because the Health Care Corporation is a public benefit corporation, it can be held liable under Section 1983 if the alleged constitutional deprivation "is the result of a 'policy or custom'" of the Health Care Corporation. *Greer v. Mehiel*, 805 F. App'x 25, 30 (2d Cir. 2020) (citing *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004)); *see also Dangler v. N.Y.C. Off Track Betting Corp.*, 193 F.3d 130, 142–43 (2d Cir. 1999) (analyzing a

3

Section 1983 claim against a public benefit corporation under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). The Court assessed the Amended Complaint's claims against the Health Care Corporation under the aforementioned standards and found that it failed to allege any plausible claims for deliberate indifference concerning his medical care because it did not allege "any facts from which this Court could reasonably construe that the challenged conduct was undertaken pursuant to any custom, policy, or practice of [NUMC]." (IFP Order at 8.) The Court also assessed the Amended Complaint's claims of deliberate indifference to Corrow's medical needs under both the Eighth and Fourteenth Amendments. The Court found that the Amended Complaint did not allege any facts suggesting intentional or reckless conduct that could give rise to liability under the Fourteenth Amendment or that any defendant knew of and disregarded any excessive risks to Corrow's safety, which could give rise to liability under the Eighth Amendment. (*Id*. at 9–12.)

Finally, in the dismissal Order, the Court granted Corrow leave to file a second amended complaint and cautioned him "to review the Court's guidance set forth above concerning the requirements to allege facts supporting plausible *Monell* claims against Nassau County and the Healthcare Corporation and plausible deliberate indifference claims." (*Id*. at 12–13.)

## II.    The Second Amended Complaint[1]

On October 17, 2024, Corrow filed a Second Amended Complaint using the Eastern District of New York's form for civil rights complaints. (SAC, ECF No. 15.) As noted, the Second Amended Complaint names as defendants: (1) the Nassau University Medical Center; (2) John

---

[1] Excerpts from the Second Amended Complaint have been reproduced here exactly as they appear in the original.  Errors in spelling, punctuation, and grammar have not been corrected or noted.

Doe (surgeon); (3) Nassau County Headquarters; (4) Officer Lee, Nassau County Police

Department, Precinct Bethpage; (5) John Doe, Detective, Nassau County Police Department,

Precinct Bethpage; and (6) Jane Doe, Paramedic Nassau County EMT. (*Id*. at 1–2.) The

"Statement of Claim" alleges that the following happened to Corrow on April 4, 2024, at about

9:30 p.m.:

> [M]y pinky finger on my left hand was severed accidentally and Nassau County
> paramedics were transporting me to Nassau University Medical Center which was a 5
> minute drive from the original scene. Upon arrival of paramedics and the entire transport
> procedure my pinky finger was hanging by the skin. Jane Doe of the paramedic EMT
> team who provided me medical care insisted to myself the finger medically would die in
> 12-15 hours. With this statement she was trying to ensure myself that in her medical
> opinion it was going to be medically reattached, as it only was a 5 minute drive to the
> facility. When I arrived on a stretcher in the hospital, procedure for the facility is to
> provide an individual with reasonable and adequate care and to be treated fairly without
> bias as first priority is to save human lives and perform necessary medical procedures. I
> was denied access to the trauma unit while suffering from a severed limb requiring
> hospital staff to adequately prepare a trauma unit to reattach and save my severed limb.
> Nassau County Police Dept. in accordance with the hospital staff instead chose to place
> me in a regular room on the ICU floor to make their own decisions on how to treat my
> finger with no say, options, or choice to myself. I believe medical malpractice and
> negligence are the sole cause of my pinky finger's amputation.

(*Id*. § II at 3–4.)[2] The Second Amended Complaint further alleges:

> In accordance with Nassau Police Dept. which has no medical professional capacity, the
> decision to violate my rights and negligently amputate my finger was made by the
> officers and detectives on the scene in accordance with the surgeon who I'll name as John
> Doe. My injuries sustained are grave and . . . Nassau University Medical Center failed to
> operate under good and accepted standards of medical care and such departure was the
> immediate cause of my injuries directly . . . . In my case, I am pleading with the court that
> prior bias and prejudice were an immediate cause of the hospital to deviate from accepted
> standards of medical procedure and choose medical malpractice to hurridly perform a
> procedure I did not 1) Agree to and the surgeon did not provide me with or disclose any
> alternatives and therto failed to inform me of any foreseeable risks associated with the
> treatment that a reasonable medical practitioner would disclose in the same circumstance.
> Secondly 2) A reasonably prudent patient in the same position would not have undergone
> the treatment had I been fully informed of an amputation. Thirdly 3) A lack of informed
> consent is a proximate cause of my injury, even so standing alone if I signed consent,

---

[2] In the "Statement of Claim" section, Corrow also cites to various state court cases.

> when I did not, does not establish defendants prima facie entitlement to judgment as a matter of law. In my attempt to prevail on this motion for judgment in this medical malpractice action, I am citing Nassau University Medical Center, Nassau County, John Doe (Surgeon) as the prima facie for deporting from good and accepted medical standards and the immediate cause of my injury resulting in permanent amputation as well as post traumatic stress disorder and mental and physical anguish as well as future wage loss and the inability to trust a public entity in the future . . . . This surgeon and his explanation for further amputation of my finger that was given initially would have left me with nerve damage, however several body cams present on Officer Lee on duty will show I was given no option and no adequate medical care to ensure proper procurement of my finger on my hand . . . . This body cam footage will show Officer Lee clearing the blood himself when the amputation was over, the surgeons medical procedure and exploration and the officers on duty using police presence and persuasion to manipulate a public benefit corporation into bending to their demands and gravely injuring me permanently instead of providing any alternative to amputation.

(*Id*. at 4–7.)

In the space that calls for a description of any injuries claimed and any medical treatment that was required or received, the Second Amended Complaint alleges:

> As an immediate cause of this event, my pinky finger on my left hand was amputated at no choice of my own. I received unprofessional, inadequate care that resulted in the removal of my finger instead of providing any means to an alternative treatment due to prejudice involvement prior with this facility.

(*Id*. § II.A at 4.) For relief, Corrow seeks compensatory and punitive damages in the amount of $5,000,000. (*Id*. § III.)

On May 20, 2025, NUMC filed a letter seeking a conference regarding its anticipated motion to dismiss the Second Amended Complaint. (ECF No. 37.) Corrow filed a letter in response on May 22, 2025. (ECF No. 38.) On May 23, 2025, the Court issued an order waiving the pre-motion conference requirement and set a briefing schedule for NUMC's anticipated motion to dismiss. (Elec. Order, May 23, 2025.) On June 30, 2025, Corrow filed a letter informing the Court that, as of June 27, 2025, he had not yet received NUMC's motion to dismiss, which was due on June 20, 2025. (Elec. Order, Jul. 3, 2025.) However, NUMC had filed an affirmation on the docket attesting that it had served Corrow with its Motion by sending it to

him by email and mailing it to his address of record. (ECF No. 44.) Accordingly, the Court

construed Corrow's letter as a motion for an extension of time to file his opposition to NUMC's

Motion and granted him an extension of time. (Elec. Order, Jul. 3, 2025.)

Pursuant to this Court's recommended bundling practice, on July 31, 2025, NUMC filed

the Motion, Corrow's opposition (Mem. in Opp. ("Opp."), ECF No. 55-3[3]), and its reply to

Corrow's opposition (Reply, ECF No. 55-4). On August 13, 2025, Corrow filed a letter raising

additional arguments in opposition to NUMC's Motion. (Ltr. ("Sur-reply"), ECF No. 57.)

Although Corrow did not seek leave before raising these additional arguments, in light of his pro

se status the Court accepted his letter and construed it as a sur-reply. (Elec. Order, Aug. 15,

2025.)

**LEGAL STANDARDS**

This Court is required to construe pleadings "filed by *pro se* litigants liberally and

interpret them to raise the strongest arguments that they suggest." *Hunter v. McMahon*, 75 F.4th

62, 67 (2d Cir. 2023) (quotation marks omitted). "[A] *pro se* complaint,

however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted

by lawyers." *Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019) (citing *Erickson v. Pardus*, 551

U.S. 89, 94 (2007)) (quotation marks omitted).

Nevertheless, to avoid dismissal under Rule 12(b)(6), a complaint must plead sufficient

facts to "state a claim to relief that is plausible on its face." *Cardinal Motors, Inc. v. H&H Sports

Prot. USA Inc.*, 128 F.4th 112, 120 (2d Cir. 2025) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[3] Corrow's opposition to NUMC's motion is titled "amended complaint" and was initially docketed as such. (ECF No. 50.) However, liberally construing Corrow's filing in light of his pro se status, the Court determined that the filing is actually his opposition to NUMC's Motion, and the docket entry was modified accordingly. (*See* Elec. Order, Jul. 23, 2025.)

(2009)). In determining whether a claim is sufficiently plausible to withstand dismissal under Rule 12(b)(6), a court "accept[s] all factual allegations in the complaint as true" and "draw[s] all reasonable inferences in the plaintiff's favor." *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 113 (2d Cir. 2023). Nevertheless, a court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 307 (2d Cir. 2022). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *accord Schiebel v. Schoharie Central School Dist.*, 120 F.4th 1082, 1106 (2d Cir. 2024). While "detailed factual allegations" are not required, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. A complaint fails to state a claim "if it tenders naked assertions devoid of further factual enhancement." *Id.*

## DISCUSSION

### I.      Section 1983 Claim – Deliberate Indifference

NUMC argues that the Second Amended Complaint fails to allege a plausible claim against it for deliberate indifference concerning the medical care provided to Corrow for his injured finger because "[t]he facts as alleged clearly demonstrate that the medical personnel at NUMC did not recklessly fail to act or treat [Corrow's] injury." (Mot. at 4.) Rather, NUMC argues, the allegations in the Second Amended Complaint illustrate that Corrow was treated for his injuries promptly, and his disagreement over the surgeon's course of treatment cannot give rise to a deliberate indifference claim. (*Id.*) In opposition, Corrow argues that NUMC exhibited

8

deliberate indifference to his health by placing him in "a regular emergency room area" rather than in the hospital's trauma unit and failing to prepare him for surgery while "listening to the detective barking orders to violate the hospital policy[.]" (Opp. at 3.)[4] Corrow also argues that the treatment that he received was "far afield of accepted professional standard[s]" and was thus unconstitutional. (*Id*. at 4.)[5]

As a preliminary matter, the Court construes all claims against NUMC in the Second Amended Complaint as brought against the Health Care Corporation. (*See* IFP Order at 7.) As explained in this Court's Order granting Corrow's motion to proceed in forma pauperis and dismissing the Amended Complaint, the Health Care Corporation is a public benefit corporation and therefore may be held liable for constitutional deprivations under the standards set forth in *Monell v. Department of Social Services*, 436 U.S. 658 (1978). *See Greer v. Mehiel*, 805 F. App'x 25, 30 (2d Cir. 2020) (holding that a public benefit corporation can be held liable under Section 1983 pursuant to *Monell*); *Dangler v. N.Y.C. Off Track Betting Corp.*, 193 F.3d 130, 142–43 (2d Cir. 1999) (applying *Monell* to claims against another public benefit corporation).

---

[4] Corrow's opposition includes additional factual allegations regarding the hospital staff, the surgeon who treated him, and the police officers present at the hospital. However, the Court only considers the factual allegations in the Second Amended Complaint because, "[e]ven with the liberal standards applicable to pro se litigants, the plaintiff cannot amend his complaint by asserting new allegations for the first time in an opposition to a motion to dismiss." *Rojas v. Nuvem Health LLC*, No. 25-cv-4684, 2025 WL 3157770, at *4 (S.D.N.Y. Nov. 12, 2025); *see also Wright v. Ernst & Young LLP*, 152 F.3d 169 (2d Cir. 1998) (a party may not amend its pleadings through statements in motion papers).

[5] NUMC also moved to dismiss the Second Amended Complaint's claims of negligence and medical malpractice. (Mot. at 6.) However, in his opposition to the Motion, Corrow clarified that he is only bringing deliberate indifference claims and not claims for negligence or medical malpractice. (Opp. at 1 ("[D]eliberate indifference is the . . . sole cause of this claim.").) Accordingly, Corrow concedes that the Second Amended Complaint does not plead negligence or medical malpractice claims, and this Court does not analyze such claims.

9

In *Monell*, the Supreme Court established that "municipalities and other local government units" are "persons" who may be liable under Section 1983. 436 U.S. at 690. Still, "a municipality cannot be held liable under [Section] 1983 on a respondeat superior theory." *Id*. at 691. In other words, the plaintiff must show that, "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 98 (2d Cir. 2020). Accordingly, in order to bring a *Monell* claim against a municipality or other local government unit, the plaintiff must allege facts supporting: "(1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." *Friend v. Gasparino*, 61 F.4th 77, 93 (2d Cir. 2023). A plaintiff may establish the existence of a municipal policy giving rise to *Monell* liability in four different ways:

> (1) a formal policy endorsed by the municipality . . . ; (2) actions directed by the government's authorized decisionmakers or those who establish governmental policy . . . ; (3) a persistent and widespread practice that amounts to a custom of which policymakers must have been aware . . . ; or (4) a constitutional violation resulting from policymakers' failure to train municipal employees.

*Deferio v. City of Syracuse*, 770 F. App'x 587, 589–90 (2d Cir. 2019); *see also Savarese v. City of New York*, 547 F. Supp. 3d 305, 354 (S.D.N.Y. 2021).

Here, NUMC's Motion fails to address *Monell* in any capacity and does not argue whether the Second Amended Complaint alleges facts that plausibly support any of the aforementioned theories of *Monell* liability. Instead, it argues that the allegations in the Second Amended Complaint do not support a plausible deliberate indifference claim against NUMC. As such, the Court assumes, without deciding, that the Second Amended Complaint's allegations concerning NUMC constitute actions that were taken in accordance to an official NUMC policy

10

or custom and proceeds to assess whether the allegations support a plausible deliberate indifference claim against NUMC.

A pre-trial detainee's claims of deliberate indifference are governed by the Due Process Clause of the Fourteenth Amendment.[6] *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) ("A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment."); *see also Swinton v. Livingston Cnty.*, No. 21-1434, 2023 WL 2317838 (2d Cir. Mar. 2, 2023) (analyzing a pretrial detainee's denial of medical treatment claim under the Fourteenth Amendment standard) (summary order). To prove a claim of deliberate indifference under the Fourteenth Amendment, a pre-trial detainee must satisfy both an objective prong and a subjective prong. *Id*.

To satisfy the objective prong, "the alleged deprivation of adequate medical care must be sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006), *abrogated in part on other grounds by Kravitz v. Purcell*, 87 F.4th 111, 119, 122 (2d Cir. 2023) (quotation marks omitted)[7]; *Maldonado v. Town of Greenburgh*, 460 F. Supp. 3d 382, 395 (S.D.N.Y. 2020)

---

[6] The Second Amended Complaint does not specify whether Corrow is a pre-trial detainee or is incarcerated post-conviction. (*See generally*, SAC.) However, in its Motion, NUMC asserts that Corrow was a pre-trial detainee and only raises arguments under the Fourteenth Amendment. (Mot. at 3.) In opposition, Corrow confirmed that he is a pre-trial detainee. (*See* Opp. at 3.) As such, the Court evaluates the Second Amended Complaint's deliberate indifference claim under the Fourteenth Amendment, rather than the Eighth Amendment.

[7] *Salahuddin* addresses the objective prong of a deliberate indifference claim in the context of the Eighth Amendment. *See Salahuddin*, 467 F.3d at 279. However, the objective prong poses the same standard under the Eighth and the Fourteenth Amendments. *See Horace v. Gibbs*, 802 F. App'x 11, 14 (2d Cir. 2020).

(same). "Factors relevant to the seriousness of a medical condition include whether 'a reasonable doctor or patient would find it important and worthy of comment,' whether the condition 'significantly affects an individual's daily activities,' and whether it causes 'chronic and substantial pain.'" *Salahuddin*, 467 F.3d at 279 (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir.1998)); *see also Sherman v. Cook*, No. 3:20-cv-1485, 2021 WL 311283, at *5 (D. Conn. Jan. 29, 2021) ("A 'sufficiently serious' medical condition is a condition that may lead to extreme or chronic pain, degeneration or death." (citing *Brock v. Wright*, 315 F.3d 158, 162–63 (2d Cir. 2003); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996))).

To satisfy the subjective prong, a plaintiff must plausibly allege that the defendant "official 'acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety.'" *Darnell*, 849 F.3d at 35; *see also Horace v. Gibbs*, 802 F. App'x 11, 14 (2d Cir. 2020); *Charles v. Orange Cnty.*, 925 F.3d 73, 86–87 (2d Cir. 2019) (holding that while this "formulation of the deliberate indifference standard was developed in cases involving unconstitutional conditions of confinement," the "same principles" apply to claims of unconstitutionally inadequate medical treatment). Further, "[a] plaintiff must show something more than mere negligence to establish a deliberate indifference claim in the Fourteenth Amendment context." *Charles*, 925 F.3d at 87. Accordingly, "mere medical malpractice is not tantamount to deliberate indifference, but it may rise to the level of deliberate indifference when it involves culpable recklessness, i.e. an act or failure to act that evinces a conscious disregard of substantial medical harm." *Id*. Therefore, a detainee "asserting a Fourteenth Amendment claim for deliberate indifference to his medical needs can allege either that the defendants *knew* that

12

failing to provide the complained of medical treatment would pose a substantial risk to his health or that the defendants *should have known* that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health." *Id.* (emphasis in original).

Here, NUMC does not contest that the allegations of the Second Amended Complaint satisfy the requirements of the objective prong of a Fourteenth Amendment deliberate indifference claim, which requires plausibly alleging that there was a sufficiently serious deprivation of medical care. (*See* Mot. at 3–4.) To be clear, the allegations of the Second Amended Complaint that Corrow's finger was "severed" and "hanging by the skin" satisfies the objective prong.  (Sec. Am. Compl. § II at 3–4.) A severed fingered undoubtedly affects an individual's ability to participate in daily activities and likely causes substantial pain. *See Salahuddin*, 467 F.3d at 279; *Sherman*, 2021 WL 311283, at *5. Accordingly, the Court finds that the objective prong of the Fourteenth Amendment deliberate indifference claim is satisfied at this stage of the proceedings.

However, the Second Amended Complaint does not satisfy the subjective prong of the deliberate indifference claim because it does not allege any facts that plausibly suggest any intentional or reckless conduct of which any defendant knew or should have known that would pose an excessive risk to Corrow's health or safety. At most, the Second Amended Complaint alleges that the surgeon acted with negligence that resulted in medical malpractice. (*See* Sec. Am. Compl. § II at 4 (alleging that Corrow's pinky finger was wrongfully amputated as a result of "medical malpractice and negligence").) But it is well-established that negligence or medical malpractice does not give rise to deliberate indifference under the Fourteenth Amendment. *See Charles*, 925 F.3d at 87 ("A plaintiff must show something more than mere negligence to establish deliberate indifference in the Fourteenth Amendment context. Thus, mere medical

13

malpractice is not tantamount to deliberate indifference . . . .); *see also Swinton*, 2023 WL 2317838, at *2 ("Under the Fourteenth Amendment, mere medical malpractice is not tantamount to deliberate indifference."). Rather, to state a plausible deliberate indifference claim, allegations of medical malpractice or negligence must be coupled with allegations showing "culpable recklessness, i.e., an act or a failure to act that evinces a conscious disregard of a substantial risk of serious harm." *Charles*, 925 F.3d at 87; *Swinton*, 2023 WL 2317838, at *2 ("[A] plaintiff must demonstrate, 'at a minimum,' that the defendant provided deficient medical treatment with 'culpable recklessness . . . that evinces a conscious disregard of a substantial risk of serious harm' to his health.") (quoting *Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021)). But the Second Amended Complaint does not allege that any NUMC personnel consciously disregarded a substantial risk of serious harm to Corrow. Rather, it alleges that the surgeon who operated on Corrow chose to amputate his finger because doing otherwise would have "left [Corrow] with nerve damage." (*Id*. at 5.) The allegations concerning the surgeon's reasoning for pursuing this particular approach indicates the surgeon assessed—rather than disregarded—the nature of Corrow's injury and chose a course of action accordingly.

Although Corrow disagrees with the surgeon's choice to amputate his finger, "a mere disagreement over the proper course of treatment, without more, does not evince a conscious disregard of a serious risk of harm" to Corrow's health. *Swinton*, 2023 WL 2317838, at *2; *see also Chance*, 143 F.3d at 703 ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim."); *Darby*, 14 F.4th at 129 (finding that a plaintiff's disagreement with a defendant's "assessment of the severity of his condition and recommendation for treatment . . . constitutes, at most, a difference of opinion about the proper

14

course of treatment; it does not demonstrate deliberate indifference [under the Fourteenth Amendment] to a substantial risk of harm to [plaintiff]'s health").

Accordingly, because the Second Amended Complaint alleges mere negligence and medical malpractice by NUMC and lacks any factual allegations suggesting that NUMC consciously disregarded any substantial risk to Corrow's health, it fails to state a plausible Fourteenth Amendment deliberate indifference claim against NUMC. Similarly, Corrow's disagreement with NUMC's course of treatment also fails to support a claim of deliberate indifference.

## II.    Leave to Amend

A pro se plaintiff should ordinarily be given the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shomo v. City. of New York*, 579 F.3d 176, 183 (2d Cir. 2009). However, leave to amend is properly denied where amendment would be futile. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (where amendment would be "futile," leave to amend the complaint should be denied). Similarly, "where the Court has put Plaintiff on notice of the deficiencies in his original complaint and given him an opportunity to correct these deficiencies in an Amended Complaint, but Plaintiff has failed to do so, dismissal with prejudice is appropriate." *Harrison v. Traylor*, No. 17-cv-6678, 2022 WL 580773 at *6 (S.D.N.Y. Feb. 25, 2022) (quoting *Coon v. Benson*, No. 09-cv-230, 2010 WL 769226 (S.D.N.Y. Mar. 8, 2010)).

As explained above, earlier in this litigation, the Court dismissed Corrow's Amended Complaint after screening it pursuant to 28 U.S.C. § 1915A and granted him leave to file a second amended complaint. (IFP Order at 12–13.) In the portion of the IFP Order granting Corrow leave to file a second amended complaint, the Court cautioned Corrow to "review [its]

guidance set forth [in the IFP Order] concerning the requirements to allege facts supporting plausible *Monell* claims against [NUMC] and plausible deliberate indifference claims." (*Id*. at 13.) Here, the allegations against NUMC in the Amended Complaint and Second Amended Complaint are similar in all material respects and set forth Corrow's disagreements with decisions made by NUMC staff in the course of treating Corrow's injured pinky finger. (*Compare* IFP Order at 2 *with supra* at Background § II.) As detailed above, these allegations are not sufficient to state a plausible Fourteenth Amendment deliberate indifference claim against NUMC. Because the allegations in the Second Amended Complaint do not cure the specific deficiencies that the Court identified in the Amended Complaint, the Court denies leave to amend and dismisses the claims against NUMC with prejudice. *See Bridges v. Corr. Servs.*, No. 17-cv-2220, 2022 WL 1500633 (S.D.N.Y. May 12, 2022) (dismissing pro se plaintiff's second amended complaint with prejudice after it failed to cure the deficiencies in the amended complaint); *Coon*, 2010 WL 769226 at *6 (same).

## CONCLUSION

For the reasons set forth above, NUMC's Motion is GRANTED in its entirety, and the claims set forth in the Second Amended Complaint against NUMC are dismissed with prejudice.

The Clerk of the Court shall mail a copy of this Order to Corrow at his address of record and shall note such mailing on the docket.

16

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

Dated: Central Islip, New York
      June 26, 2026

                                          */s/ Nusrat J. Choudhury*
                                          NUSRAT J. CHOUDHURY
                                          United States District Judge